IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

DWAYNE DILLARD,                        §
Institutional ID No. 00892606          §
SID NO. 05205327                       §
                                       §
            Plaintiff,                 §
                                       §        Civil Action No. 1:24-cv-00039-BU
v.                                     §
                                       §
WARDEN COZBY, *et al.*,                §
                                       §
            Defendants.                §

## ORDER OF DISMISSAL

Plaintiff Dwayne Dillard, an inmate at Texas Department of Criminal Justice's ("TDCJ's") Robertson Unit, brings this action against Defendants Warden Cozby, Disciplinary Captain Merchant, Sergeant Turnbow, and Sergeant Layne (collectively, "the Defendants"), alleging that they violated his constitutional rights. Dillard's claims are subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because Dillard has been granted leave to proceed *in forma pauperis*, Dkt. No. 8, and he sues government officials, *see* Dkt. No. 1.

After reviewing Dillard's pleadings and the authenticated records provided by TDCJ, the Court DISMISSES Dillard's claims.

## I. JURISDICTION

Dillard brings his claims under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 1. Venue is proper in the Northern District of Texas, Abilene Division, because Dillard's claims arise from his incarceration

at the TDCJ Robertson Unit located in Jones County, Texas. 28 U.S.C. § 1391(b)(2). The undersigned has the authority to enter this Order after United States District Court Judge James Wesley Hendrix transferred Dillard's case to the undersigned for preliminary screening, and Dillard consented to the undersigned exercising the full jurisdiction of this Court. Dkt. Nos. 9, 14; 28 U.S.C. § 636(c)(1).

## II.  FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favor the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

### A.  Facts Alleged in Complaint

Dillard claims that on November 9, 2023, Turnbow picked him up from behind and slammed him on the ground face first while he was handcuffed. Dkt. No. 1 at 11. He claims that prior to the assault he did not refuse any of Turnbow's verbal commands. *Id*. As a result of the assault, Dillard sustained cuts to his upper lip and the inside of his mouth as well as swollen gums and upper lip. *Id*. Because of these injuries, Dillard was not able to eat for five days. Dkt. No. 13 at 6. Dillard claims that this incident was consistent with Turnbow's pattern of assaulting inmates unprovoked. Dkt. No. 1 at 9. Turnbow wrote a false a

disciplinary report regarding the incident, stating that he used force because Dillard broke escort. *Id*. Dillard states that Turnbow also accused Dillard of interrupting the count of the Robertson Unit because of his actions. Dkt. No. 13 at 6.

Dillard claims that there was not a proper investigation into this incident. Dkt. No. 1 at 9. No unit staff took his statement and Merchant, the disciplinary captain assigned to the case, did not report the incident to the Office of the Inspector General. *Id*. Dillard claims Merchant did not conduct an impartial hearing which ultimately was decided against Dillard. Dkt. No. 1 at 3. Namely, Dillard alleges that Merchant had a conflict of interest because Dillard had previously filed a grievance against him, alleging that he stole his headphones. Dkt. No. 17 at 18-19. Merchant did not allow Dillard to access or present the video of the incident at the hearing. Dkt. No. 13 at 4. Dillard wanted to present the video of the incident because he believed it would show he was compliant, and did not break escort as alleged, in the moments leading up to Turnbow's use of force. *Id*. at 3. Merchant further did not allow Dillard to present his offender participation statement or call Turnbow as a witness at the hearing. *Id*. at 8.

Ultimately, Dillard was convicted of the disciplinary infraction and received the following punishments: (1) a 45-day restriction on his recreation, (2) a 60-day restriction on his commissary, (3) a 60-day restriction on phone use, and (4) loss of good time credits. *Id*. at 9. Dillard successfully appealed that decision, and his disciplinary case was overturned. Dkt. No. 1 at 8.

On November 27, 2023, Cozby placed a sixty day hold on Dillard's trust fund account immediately after the disciplinary hearing. Dkt. Nos. 1 at 4; 13 at 2. This had the

effect of preventing Dillard from purchasing commissary items and filing documents with the courts, as he could not pay the fees associated with such filings. Dkt. Nos. 1 at 4; 13 at 2. The records state that this hold was placed on Dillard's account for "an investigation." Dkt. No. 13 at 2. Yet Dillard was not informed of any investigation by Unit Staff, nor has he received the results from this alleged violation. Dkt. No. 14 at 2. Dillard claims that Cozby placed this hold on his account in retaliation for writing a grievance. Dkt. No. 1 at 4. Dillard states that this hold was not among the punishments he received at his disciplinary hearing. Dkt. No. 13 at 2.

The hold was not removed until Dillard's disciplinary case was overturned on February 14, 2024. *Id*. at 3. The hold prevented Dillard from purchasing the items necessary to file certain papers with the Court of Criminal Appeals where he had filed a habeas corpus application.[1] Dkt. Nos. 13 at 2; 17 at 27. If he had the necessary materials, Dillard wanted to inquire about the court's previous denial of his habeas corpus application. Dkt. No. 22 at 2.  Further, because Dillard was unable to purchase food items at the commissary, he lost weight and began to experience issues with his blood pressure. Dkt. No. 17 at 17. Robertson health departments did not intercede when Dillard complained of these health issues. Dkt. No. 17 at 17.

### B.  Facts Alleged in Subsequent Pleadings

After filing the present lawsuit, Dillard claims he was subject to a string of retaliatory acts. This retaliation took the form of (1) restricting Dillard's access to legal

---

[1] Dillard attached numerous grievances to his motion for preliminary injunctive relief. One of these grievances indicated that he was provided with and I-302 and indigent envelope. Dkt. No. 17 at 28.

materials, (2) limiting his ability to practice his religion, (3) placing him in administrative segregation, (4) restricting his commissary privileges, and (4) starving him. Dkt. No. 17 at 4, 18.

### 1. *Legal materials*

On July 31, 2024, court documents went missing from Dillard's cell. Dkt. No. 17 at 5. The legal documents included those relating to Dillard's state case as well as the the present lawsuit. Dkt. No. 22 at 1. Dillard wrote a letter to the court and filed a grievance on August 13, 2024. After which, "the court documents and exhibits mysteriously reappeared from out of nowhere." [2] Dkt. No. 17 at 5. Dillard claims that Unit Staff falsely stated that the items were found in another inmate's cell, but Dillard alleges Sergeant Layne stole this property. *Id*.

On August 4, 2024, Dillard's access to the Law Library application on his tablet was disabled. Dkt. No. 22 at 2. It remained disabled until at least September 24, 2024. *Id*. Further, the Law Library staff refused to answer the request forms Dillard sent requesting certain legal cases. *Id*. at 3.

Unit staff also removed a message Dillard had attempted to send to his mother. Dkt. No. 17 at 6. The message was removed because it allegedly contained a threat. *Id*. Dillard claims that this message included a request that his family retain a lawyer on his behalf and details about the false charges. *Id*. Dillard was not afforded an opportunity to appeal this decision. *Id*.

---

[2] Dillard claims that only some of his property was returned on August 14, 2024. Dkt. No. 17 at 15.

### 2. *Religious materials*

On July 31, 2024, Dillard's religious items also went missing from his cell. Dkt. No. 17 at 5. These items included prayer beads, a religious medallion, kufi, books, and study manuals. Dkt. No. 22 at 3-4. The books and manuals were returned to Dillard on August 14, 2024, but the other items are still missing. *Id*. Dillard also claims that the Unit Staff prevented him from attending religious studies and congregational services related to his Islamic faith. Dkt. No. 22 at 5.

### 3. *Administrative Segregation*

On August 16, 2024, Dillard was placed in administrative segregation. *Id*. at 6. Dillard did not receive a hearing prior to this transfer. *Id*. Dillard was placed in administrative segregation in response to receiving a disciplinary charge for refusing a urinalysis and inciting a riot.[3] Dkt. No. 17 at 6. Dillard was found guilty of these infractions on August 12, 2024. Dkt. No. 22 at 7. Dillard alleges that he did not commit this infraction, rather it was an excuse to send him to administrative segregation for retaliatory purposes.

This infraction occurred on July 28, 2024, during what Dillard describes as a "race riot." Dkt. No. 17 at 13. Dillard complains that Unit Staff engaged in various misconduct in the riot's aftermath including subjecting inmates to urinary analysis. *Id*. at 13-14. He further complains that the disciplinary hearing was flawed as he was not allowed to present evidence, such as the video of the underlying event, or call witnesses. Dkt. No. 22 at 12-13.

---

[3] Dillard did not receive any paperwork and the disciplinary case he received was still pending appeal at that time. Dkt. No. 17 at 6.

4. *Commissary Privileges, Starvation Claim*

Cozby froze Dillard's inmate trust fund which had the effect of preventing him from purchasing commissary items. Because of this restriction, Dillard was not permitted to buy food, over the counter medications, or other hygienic items such as lotion, foot powder, hair grease, and shaving supplies. Dkt. No. 22 at 11. This has "taken a toll on [Dillard's] physical appearance and skin care." *Id*. Further, as discussed above, Dillard's inability to make commissary purchases has prevented him from buying his preferred food items which is causing him to starve. Dkt. No. 17 at 17. In addition to limiting his ability to purchase food items, Dillard also claims that the Unit Staff is starving him by providing him "slop" for meals. *Id*.

Dillard seeks a declaratory judgment from this court "of wrongdoing by TDCJ staff" as well as punitive damages. Dkt. No. 1 at 4.

## III. THE PARTIES

Dillard filed suit on March 13, 2024, and after supplementing his claims, he names as defendants Warden Jennifer Cozby, Disciplinary Captain Turnbow, Sergeant Layne, and Sergeant Turnbow. Dkt. No. 1. Dillard further supplemented his claims through his responses to the Court's questionnaires. Dkt. Nos. 13, 22.

The Court construes Dillard's pleadings as bringing the following claims. He sues Turnbow for excessive force and retaliation. He sues Cozby for retaliation, failure to protect and for denying his access to the court system. He sues Merchant for denial of due process and retaliation. Dillard further makes allegations that members of Robertson's Unit Staff, including Sergeant Layne, retaliated against him by (1) burdening his ability to practice

Islam (2) denying him access to the courts (3) deprived him of his property (4) starved him and (5) failed to provide medical care for the health consequences of this starvation.

## IV.  LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* or filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly, it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts

actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district

court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V. ANALYSIS

Dillard asserts a variety of claims in his Complaint and supplemental pleadings. As a threshold matter, the Court must determine whether additional claims Dillard presents in his supplemental pleadings are appropriate to consider regarding his original Complaint.

The Fifth Circuit Court of Appeals has discouraged the "creative joinder of actions" by prisoners attempting to circumvent the fee-payment and three-strikes provision of the PLRA. *See Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *see also, e.g., Covarrubias v. Foxworth*, No. 6:13-CV-812, 2017 WL 1159767 (E.D. Tex. Mar. 29, 2017) (severing prisoner lawsuit consisting of unrelated claims into three separate cases); *Nelson v. Francis*, No. 2:02-CV-347, 2003 WL 21766528 (N.D. Tex. July 29, 2003) (severing prisoner lawsuit consisting of unrelated claims into seven separate cases). Federal Rule of Civil Procedure may allow the joinder of additional parties only if the claims arise out of a single transaction and contain a question of fact or law common to all defendants.

Fed. R. Civ. P. 20.

Here, Dillard's initial claims stemmed from Turnbow's use of force on November 9, 2023. Dkt. No. 1. On August 22, 2024, over nine-months after the initial incident, Dillard filed a Motion for Preliminary Injunction in which he asserted claims arising from more recent conduct, against new defendants. *See generally* Dkt. No. 17. Some of these claims are connected to the initial complaint, as Dillard alleges that the violations were in retaliation for filing the initial lawsuit. However, Dillard attempts to allege new claims against new defendants regarding the "race riot" and subsequent disciplinary hearings. Despite presenting new claims with additional defendants, Dillard did not file a request for leave to amend in compliance with Federal Rule 15 of Civil Procedure and this Court's Judicial Screening and Standing Order, Dkt. No. 5, and PRLA Filing Fee Order, Dkt. No. 8 at 2. Accordingly, the Court will not assess these claims. If Dillard wishes to sue these new defendants for this independent conduct, he must file a new claim and pay the required filing fee.

The Court will assess these claims in the following order: (1) excessive force claim against Turnbow (2) failure to protect claim against Cozby (3) due process claim against Merchant and (4) his retaliation claims against various members of the Unit Staff. Embedded within his retaliation claims are allegations that Unit staff (1) deprived him of personal property (2) denied him access to the courts (3) interfered with his practice of Islam (4) denied him proper medical care and (5) restricted his commissary privileges. The Court will analyze each claim separately.

**A. Excessive Force**

Dillard alleges that Sergeant Turnbow "picked me up from behind, while I was in full restraints with my hands behind my back and slammed me into the ground head first." Dkt. No. 13 at 5. Dillard further states that Turnbow's justification for using such force – that Dillard broke escort – was fabricated. Dkt. No. 1 at 9; Dkt. No. 17 at 7. As a result of this incident, Dillard suffered injuries to his mouth and lip. Dkt. No. 1 at 11.

When a prisoner alleges that prison officials used excessive force against them in violation of the Eighth Amendment, the core judicial inquiry is whether the force "was applied in a good-faith effort to maintain or restore discipline, or [applied] maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Given the nature of being in prison, not every dispute resulting in a "push or shove" will end up being a constitutional violation. *Hudson*, 503 U.S. at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). A claim for excessive force "must allege '(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations omitted). Ultimately, "[t]he second and third elements collapse into a single objective-reasonableness inquiry." *Id.*

In deciding whether an officer's force was reasonable under the circumstances, the court may consider several factors. *McGuffey v. Blackwell*, 784 F. App'x. 240, 242–43 (5th Cir. 2019). These factors include: the severity of the injury; "the need for the application of force; the relationship between the need and the amount of force used; the threat

reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response." *Id.*

In the present case, Dillard alleges that Turnbow used this force when he was restrained and in compliance. Taking these well-pleaded facts as true, there was no need for the application of force to restore or maintain order as Dillard was not acting in defiance. Further, Dillard's claim that he was restrained at the time of the incident warrants the inference that he did not pose a threat to Turnbow. The incident report contains Turnbow's allegation that his use of force was in response to Dillard "breaking escort." Dillard alleges that this was a post hoc justification, fabricated in attempt to excuse Turnbow's actions. Because the Court must resolve all factual disputes in Dillard's favor, it must accept Dillard's well-pleaded version of the facts.[4]

However, even accepting Dillard's version of events, the Court cannot find excessive force given Dillard's injuries. The Eighth Amendment's prohibition of cruel and unusual punishment does not shield against de minimis uses of physical force, provided that the force is not "repugnant to the conscience of mankind." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)). From this event, Dillard claims to have suffered cuts to the inside and the outside of his mouth. The records reflect that these were superficial wounds, and Dillard does not plead that the injuries were serious enough to warrant medical

---

[4] The Court ordered TDCJ to provide the surveillance video of the incident multiple times. Dkt. Nos. 12, 23. However, despite these requests TDCJ has only provided video evidence of after the use of force. Because this video does not show the moments leading up to the use of force, the Court cannot rely on it to resolve the factual dispute as to whether Dillard broke escort.

treatment. Because the cuts to Dillard's mouth were de minimis, he fails to state an excessive force claim. *See Siglar*, 112 F.3d at 193-94 (finding a bruised ear lasting for three days was de minimis and could not sustain an excessive force claim).

For these reasons, Dillard's excessive force claim against Turnbow is DISMISSED for failure to state a claim.

## B. Failure to Protect

Dillard claims that Cozby failed to protect him from Turnbow's use of excessive force. Dillard asserts that Cozby was aware that Turnbow had a pattern of using excessive force with inmates. Despite this knowledge, Cozby allowed Turnbow to remain on the staff which gave him the opportunity to commit the November 9 assault on Dillard.

To bring a failure to protect claim, a prisoner must plausibly demonstrate: (1) that he was incarcerated under conditions that posed a substantial risk of harm; and (2) that officials were deliberately indifferent to "a sufficiently substantial 'risk of serious damage to [the prisoner's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (internal cites omitted).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). It requires more than mere negligence. *Farmer*, 511 U.S. at 837. And it "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001).

A prison or jail official acts with deliberate indifference only when "he knows that inmates face a substantial risk of serious bodily harm" and "disregards that risk by failing

to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Thus, the jail official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837.

A plaintiff does not need to show that a defendant knew of the specific harm that befell the plaintiff. *Id.* at 842. Instead, if a plaintiff presents evidence that there was a substantial risk of inmate attacks and that risk "was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and can show that the defendant had been exposed to that information, then the plaintiff has stated a claim for failure to protect. *Id.* at 842–43.

Dillard alleges that Cozby failed to protect him from Turnbow, claiming that she "stood by and did nothing" when Turnbow assaulted him on November 9, 2023. Dkt. Nos. 17 at 5; 22 at 14. Dillard's theory underlying this claim is that Cozby was aware of Turnbow's pattern of use of force and her failed to protect Dillard by allowing him to remain on the Staff. Dkt No. 22 at 14. Though the failure to protect an inmate from the use of excessive force by other prison officials can constitute a §1983 claim under certain circumstances, Dillard has not sufficiently alleged such facts here. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Though Dillard alleges that Turnbow had used excessive force on a different prisoner prior to when Dillard claims Turnbow assaulted him, this one incident does not prove that Turnbow had a longstanding practice of excessive force despite Dillard's conclusory statement to the contrary. Dkt. No. 22 at 14; *see Farmer*, 511 U.S. at 842-43. Further, Dillard does not explain how Cozby was made aware of this pattern nor

does he allege that she further drew the inference that Turnbow was a threat to the Robertson inmates.[5] *See Farmer*, 511 U.S. at 837.

Accordingly, Dillard's has failed to state a claim that Cozby failed to protect him from Turnbow's assault.

## C. Due Process

Dillard claims that Merchant failed to conduct an impartial disciplinary proceeding because (1) he presided over that hearing despite having a conflict of interest (2) he did not allow Dillard to present an inmate participation statement (3) he did not allow Dillard to present video evidence of the incident and (4) he did not allow Dillard to call Turnbow as a witness.

An inmate subject to a prison disciplinary proceeding is not afforded the same breadth of rights as a defendant in a criminal proceeding *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The inmate's rights are limited to only the following: (1) written notice of the charges at least 24 hours in advance of the hearing (2) an opportunity to call witnesses and present evidence, only when doing so is not unduly hazardous to institutional safety or correctional goals and (3) the factfinder's written statement describing the evidence relied on and the reasons for the disciplinary action. *Id*. at 563-70.

 In order to state a due process claim within this context, the inmate must also prove that the disciplinary conviction led to a sanction which infringed upon a constitutionally

---

[5] Dillard further concedes that Cozby could not have protected him during the assault as she was not present and only became aware of Turnbow's use of force when viewing the video recording. Dkt. No. 22 at 14.

protected liberty interest or a state-created interest. *Sandin v. Conner*, 515 U.S. 472, 483-87, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995). The Due Process Clause is not implicated with every change in a prisoner's conditions of confinement which may adversely affect the prisoner. *See Madison v. Parker*, 104 F.3d 765, 767-68 (holding commissary and cell restrictions constitute "merely changes in conditions of confinement and" and do not trigger a due process analysis). Typically, courts only recognize a due process claim where the inmate's punishment involved a loss of good time credits, and the prisoner is eligible for mandatory supervised release. *Id*. at 769.

Here, at the conclusion of the hearing, Merchant imposed restrictions on Dillard's recreation, commissary, and phone use as well as deprived him of his good time credits.[6] Dkt. No. 13 at 9. As discussed below, none of these punishments invoke the due process clause.

Because Dillard is serving a capital life sentence he is ineligible for mandatory supervised release. *See id*., Dkt. No. 17 at 20. Therefore, Merchant's punishment depriving Dillard of his good time credits did not implicate a constitutionally protected interest. *See Arnold v. Cockrell*, 306 F.3d 277, 279 (finding that a life-sentenced inmate does not have a constitutionally protected interest in good time credits). Dillard's remaining punishments were restrictions on certain privileges. Dkt. Nos. 17 at 14; 22 at 18-20. These sanctions constitute changes to Dillard's confinement and do not rise to a liberty interest significant

---

[6] Under *Heck v. Humphrey*, a §1983 claim is legally frivolous if the underlying conviction has not been "reversed, invalidated, or otherwise set aside." 512 U.S. 477, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1993); *see Clarke v. Stadler*, 154 F.3d 186, 189 (5th Cir. 1998). Dillard's due process claim against Merchant is not barred by *Heck*, as Dillard's conviction at the disciplinary proceeding was overturned. Dkt. No 1 at 7.

enough to trigger the protection of the Constitution. *See Palmisano v. Bureau of Prisons*, 258 F. App'x 646, 648 (5th Cir. Dec. 11, 2007) (determining visitation, commissary, and telephone restrictions do not serve as a basis for constitutional rights claim); *Madison*, 104 F.3d at 768 (holding commissary and recreation restrictions constitute "merely changes in conditions of confinement and" do not trigger a due process analysis).

Thus, Dillard's due process claim arising out of the disciplinary hearing conducted in November of 2023, by Merchant, fail to state a claim upon which relief can be granted. Accordingly, Dillard's due process claims are DISMISSED.

### D. Retaliation Claims

The word "retaliation" is scattered throughout Dillard's Complaint and supplemental pleadings. *See* Dkt. Nos. 1 at 3; 13 at 4, 5; 17 at 16, 17, 18. This term is used to describe the actions of Sergeant Turnbow, Captain Merchant, Warden Cozby, and, at times, "Unit Staff" generally. Dkt. Nos. 13 at 4, 5; 17 at 17.

A retaliation claim must prove (1) the prisoner had a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Conclusory allegations, including a prisoner's personal belief that he is the victim of retaliation, are insufficient to support a claim for retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). Instead, "'[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'" *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (per curiam)

(quoting *Woods*, 60 F.3d at 1166).

The Fifth Circuit has cautioned courts to evaluate prisoners' claims of retaliation with a high degree of skepticism. *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (per curiam) (citing *Woods v. Smith*, 60 F.3d 1161, 1166). In doing so, courts prevent prisoners from "inappropriately insulat[ing] themselves from disciplinary actions by drawing the shield of retaliation around them." *Smith*, 60 F.3d at 1166. The inmate carries the significant burden of proving that the disciplinary charge was not motived by legitimate prison concerns but rather a direct result of a state official's retaliatory motive. *Id*.

Even with the liberal construction the Court affords pro se plaintiffs, it cannot create a cause of action where there is none. *See Smith v. Texas*, 2024 U.S. Dist. LEXIS 167613, *3. Dillard is unlikely to succeed on his retaliation claims against Merchant, Layne, and Turnbow as his allegations only consist of conclusory statements reflecting Dillard's subjective belief these officers were retaliating against him.[7]

Dillard's retaliation claims against Cozby and the Unit Staff warrant further review. As a threshold matter, Dillard has satisfied the first element of a retaliation claim as he alleges the retaliation is in response to his exercise of his First Amendment right to file this lawsuit and prison grievances. *See Jackson v. Cain*, 864 F.2d 1235, 1248; *Young v. Ledet*,

---

[7] Dillard alleges that Turnbow retaliated against him by lying on his incident report regarding the use of force incident on November 9, 2023. Dkt. No. 13 at 6. Dillard claims that Merchant retaliated against him by refusing to let him submit a statement or view video footage at his disciplinary hearing for the November 9 incident. *Id*. at 4. The entirety of Dillard's claim against Layne is found in a single sentence, where he alleges that Layne retaliated against him by placing him in administrative segregation. Dkt. No. 17 at 14. Dillard does not provide direct evidence of retaliatory intent for any of these claims. The Court cannot give weight to conclusory statements or Dillard's subjective beliefs. Accordingly, these retaliation claims are unlikely to succeed on their merits.

2020 U.S. Dist. LEXIS 218501, *7. However, as explained below, Dillard is unable to demonstrate the other elements of retaliation in either his claim against Cozby or the Unit Staff.

*1. Dillard's retaliation claim against Cozby*

Dillard claims that Cozby retaliated against him by restricting his access to commissary in November 2023 and placing him in administrative segregation in August 2024. Dkt. Nos. 13 at 2; 17 at 5, 13, 17. Absent conclusory allegations, Dillard provides no plausible facts to suggest that Cozby acted with a retaliatory motive regarding either adverse act. *See* Dkt. Nos. 13 at 2; 22 at 8-9; *Rodriguez*, 110 F.3d at 310. Additionally, Dillard does not provide a chronology of events from which the Court could infer such intent. Cozby restricted Dillard's commissary on November 27, 2023, four months prior to Dillard filing this present lawsuit. Dkt. No. 13 at 2; *see* Dkt. No. 1. Though Dillard claims he filed a grievance prior to the November restriction, he does not provide the date of that grievance.

Similarly, Dillard fails to establish a timeline sufficient to infer a retaliatory intent regarding his placement in administrative segregation. Dillard was placed in restricted housing on August 16, 2024. His most recent grievance was filed on or around August 8, 2024. Dillard does not allege that Cozby was aware he filed this grievance. Further, the intervening week is not sufficient to conclude retaliatory intent. Even if it were, Dillard is

unlikely to prove causation, as his placement in administrative housing was in relation to disciplinary proceedings.[8] *Reeves v. Wood*, 206 F. App'x 368, 370 (5th Cir. 2006).

>Therefore, Dillard's retaliation claim against Cozby is DISMISSED for failure to state a claim.

>*2. Dillard's retaliation claim against Unit Staff*

Dillard alleges that Unit Staff is starving him as a form of retaliation. Dkt. No. 17 at 18. Dillard states the restrictions Unit Staff placed on his commissary, preventing him from purchasing foods items of his choice, amounted to starvation.[9] Dkt. No. 22 at 17.  Further, Dillard alleges that he is receiving less food on his plate at mealtimes. *Id*. at 17.

Though long-term restrictions on commissary can constitute an adverse act, Dillard is unlikely to establish the retaliatory intent and causation elements of his claim. *See Lamb v. Crites*, 2011 U.S. Dist. LEXIS 47306, *5. Dillard does not specify who on the Unit Staff is engaging in this retaliation, nor does he establish facts to suggest that these individuals possessed a retaliatory intent when doing so. Dillard does not plead adequate facts to support that, but for him filing this lawsuit and other grievances, he would not be denied adequate food. To the contrary, Dillard concedes that these restrictions were a result of disciplinary charges. Dkt. No. 22 at 17.

---

[8] Dillard personally believes that the disciplinary actions, which resulted in his placement in administrative housing and the commissary restrictions, were based on false charges further brought in retaliation. Dkt. No. 22 at 17. Beyond conclusory statements, Dillard asserts no plausible facts indicating retaliatory intent or that he would not have been disciplined but for such intent.

[9] Dillard states his commissary account was frozen on two instances. Dkt. No. 22 at 17. Warden Cozby imposed the first restriction which spanned from November 28, 2023, through February 24, 2024. *Id*. Officer Holman imposed the second restriction which started on August 12, 2024, and will continue until December 9, 2024. *Id*.

Accordingly, Dillard's retaliation claims against the Unit Staff are DISMISSED for failure to state a claim.

Though Dillard's retaliation claims fail for lack of retaliatory motive, the adverse actions themselves raise constitutional issues. Specifically, Dillard's claims that Unit Staff (1) deprived him of his property (2) interfered with his right to exercise his religion (3) interfered with his access to the courts (4) starved him (5) denied him medical care and (6) tampered with his mail. The Court will assess each of these allegations in turn.

### E. Property Deprivation

Dillard alleges that Robertson Unit Staff deprived him of his property including his commissary funds, his legal documents and his religious items. Dkt. No. 17 at 18, 20. Even taking these facts as true, Dillard's claim pleadings are not sufficient to establish a constitutional claim.

Whether intentional or negligent, the "deprivation of property by a state employee" is not a constitutional violation "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 531, 533 (1984); *see also Parratt v. Taylor*, 451 U.S. 527, 541–44 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The Fifth Circuit has held that the availability of the tort of conversion is an adequate post-deprivation remedy for prisoners who attempt to make constitutional claims based on the loss of their property. *Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir. 1994).

Under Texas law, a plaintiff may sue for the state-law tort of conversion as a remedy for his property loss. *See id.* State tort suits only fail to provide a meaningful remedy when

"a deprivation of property is caused by conduct pursuant to establish state procedure, rather than random and unauthorized action." *Schwarzer v. Wainwright*, 810 F. App'x 358, 359 (5th Cir. 2020) (quoting *Hudson*, 468 U.S. at 532).

In the present case, Dillard does not allege that Layne removed his religious and legal materials from his cell in compliance with a state procedure but rather in retaliation. Therefore, Dillard has an adequate remedy at state law for the "unauthorized" removal of his property through Texas's state-law tort of conversion.[10] *See Hudson*, 468 U.S. at 532.

Accordingly, Dillard's deprivation of property claims are DISMISSED for failure to state a claim.

### F. Access to The Courts

Prisoners have a constitutionally recognized right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right is not unlimited rather, it only encompasses "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). A prisoner must allege injury arising out of a direct appeal of his criminal conviction, a habeas petition, or a civil rights action under § 1983. *Id.* at 354–55. Therefore, a prisoner must demonstrate an "actual injury" through pleading an underlying cause of action as an element that must be described in the complaint. *Christopher v. Harbury*, 536 U.S. 403, 415.

---

[10] A grievance Dillard attached to his pleadings indicates that Dillard entered into a settlement agreement regarding certain items he lost possession of including his prayer rug, hotpot, fan, multiplug and other commissary items. Dkt. No. 17 at 18.

Here, Dillard claims that Layne removed legal materials from his cell that prevented him from timely filing a motion with the Court regarding his habeas claim the Texas Criminal Court of Appeals. Dkt. No. 22 at 1, 3.[11] In reviewing his application, the Criminal Court of Appeals indicated that it did not have the complete record and ordered the district court to supplement the missing pages. Dkt. No. 2 at 2. The Court of Criminal Appeals later dismissed the writ. Prior to dismissal, Dillard did not receive confirmation as to whether the Court of Criminal Appeals had received the complete record. Dillard states that, without his legal materials, he was unable to request the federal court to certify a question to the Texas Court of Criminal Appeals regarding the completeness of the record upon which it based its decision. Dkt. No. 22 at 2.

The Texas Supreme Court will only answer a certified question of Texas *law* from a federal appellate court. TEX. R. APP. R. 58.1 (emphasis added); *see generally McMillian v. Amazon.com*, 983 F.3d 194, 202 (5th Cir. 2020) (holding it appropriate for the federal court to certify a question to the Texas Supreme Court pertaining to interpretation and application of state law in a federal diversity case). Dillard seemingly wanted to request this Court to intervene and direct the Court of Criminal Appeals to clarify the extent of its record. Even if this relief was attainable, Dillard has failed to plead that the opportunity to pursue this relief is no longer available. *See* Dkt. No. 22 at 2, 21. Therefore, Dillard does

---

[11] Dillard alleges these materials included "legal documents related to my state convictions, and legal documents related to this lawsuit, legal books and [a] legal dictionary, [and] hundreds of various caselaw. Dkt. No. 22 at 1. Dillard also claims that the Unit Staff denied his access to the courts by deactivating the Law Library Application on his tablet. *Id*. at 2-3. Although the right to access the courts is generally not a "freestanding right to a law library", because the Court dismisses this claim for lack of actual injury, it will not analyze whether such deactivation sufficiently constitutes interference. *See Lewis*, 518 U.S. at 356.

not plead an actual injury as the removal of his legal materials prevented him from accessing relief that does not exist. *See Harbury*, 536 U.S. at 415.

Accordingly, because he does not plausibly plead an actual injury, Dillard's denial of access claim is DISMISSED for failure to state a claim.

## G. Religious Claims

Dillard alleges that Defendants removed certain religious items from his cell and interfered with his ability to attend religious services. When a state actor has burdened an individual's ability to exercise their religion, that individual may seek relief under either the Religious Land Use and Institutionalized Persons Act ("RLUIPA") or under the First Amendment. The Court will analyze Dillard's claims under each.

### 1. RLUIPA

Congress enacted RLUIPA to provide greater protections than the rights provided under the First Amendment. *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). RLUIPA mandates that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

To benefit from the protections of RLUIPA, a plaintiff must first show that: (1) their religious exercise is grounded in a sincerely held religious belief and (2) that the

government's action substantially burdens that exercise. *Ali v. Stephens*, 822 F.3d 776, 782–83 (5th Cir. 2016) (citing *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015)).

Dillard alleges that the Unit Staff at Robertson removed religious materials from his cell. These religious materials consisted of prayer beads, a religious medallion and religious headwear. Dkt. No 22 at 3-4. Dillard also alleges that Unit Staff have prevented him from attending his Monday religious studies and Friday Congregational prayers. *Id*. at 4-5. These items and services aid Dillard in practicing his Islamic faith. *Id*. at 3-4. However, by his own admission, neither the removal of these items nor his forced absence from these services prevented Dillard from practicing Islam. Dkt. No. 22 at 4, 5. Because Dillard concedes that Defendant's conduct did not burden his ability to practice his religion, he cannot establish a RLUIPA claim.

For these reasons, Dillard's RLUIPA claim is DISMISSED for failure to state a claim.

### 2. First Amendment

The Free Exercise Clause of the First Amendment guards against government intervention which discriminates, regulates, or prohibits an individual's exercise of religion. "The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez v. C.I.R.*, 490 U.S. 680, 699, 109, S. Ct. 2136, 104 L.Ed.2d 766 (1989). Like his RLUIPA claim, Dillard's First Amendment claim fails in light of his concession that none of the alleged conduct placed a burden on his ability to practice Islam.

For these reasons, Dillard's First Amendment claim is DISMISSED for failure to state a claim.

## H. Starvation Claims

Dillard claims that the Unit Staff are starving him by providing him insufficient meals and restricting his ability to purchase his preferred food items at the commissary by placing a hold on his inmate account.

Inmates must be given "well balanced meals consisting of sufficient nutritional value to preserve life." *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986). Food service that deprives a prisoner of the "minimal civilized measure of life's necessities" is cruel and unusual punishment. *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

Inmates are not entitled to three meals per day, but the meals provided must be nutritionally and calorically adequate. *Green*, 801 F.2d at 771. Additionally, the food served to inmates does not have to be particularly appetizing. *See Alex v. Stalder*, 5:03-CV-30, 2007 WL 1231771, *1 (5th Cir. 2007) (finding the serving of food loaf, a mix of food baked into a loaf, did not rise to a constitutional violation).

Deprivation of food can be an Eighth Amendment violation depending on the amount and duration of the deprivation. *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Courts evaluate how long a plaintiff was deprived and to what extent. *See Lockamy v. Rodriguez*, 402 F. App'x 950, 951 (5th Cir. 2010). Courts also consider the alleged injury from the deprivation to determine if there is a valid claim. *Berry*, 192 F.3d at 508.

Here, Dillard does not claim that he is not being fed, to the contrary he states that

he is on a specialized diet. Dillard states that the Medical Staff placed him on a "diet for health" plan, six months ago. Dkt. No. 22 at 10. This diet requires Dillard receive two pieces of bread or cornbread, a three-ounce spoon of beans with a tablespoon of peanut butter or two slices of cheese and an additional snack in the evening to prevent weight loss. *Id*. From these facts, the Court cannot find that Dillard is being deprived of food. Though Dillard may no longer be able to purchase his preferred food items at commissary, this does not rise to a constitutional violation particularly where the restriction stems from a disciplinary infraction.

For these reasons, Dillard's starvation claim is DISMISSED for failure to state a claim.

## I.  Indifference to Medical Needs

Dillard further claims that the medical staff are refusing to treat him provide him medical treatment for the health consequences of the alleged starvation.

Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation regarding medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014). "Deliberate indifference" means that the denial of medical treatment was "much more likely than not to result in serious medical consequences, and additionally that the defendants had sufficient knowledge of the situation so that the denial of medical care constituted wanton disregard of the prisoner's rights." *Johnson v. Treen*, 759 F.2d 1231, 1238 (5th Cir. 1985).

To successfully claim a deliberate indifference to medical needs, a plaintiff must satisfy both an objective and subjective test. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

Dillard claims that the Unit Staff is acting with deliberate indifference to his medical issues, namely his increased risk of stroke resulting from his high blood pressure. Dkt. No. 17 at 5. Dillard claims that the Medical Department, including Dr. Haile and Dr. Ali, acted with deliberate indifference to his condition when they refused to intercede when Unit Staff (1) fed him "slop" (2) restricted his access to commissary and, (3) placed him in segregated housing. *Id.*

First, Dillard's supplemental pleadings negate his claim that he was denied medical treatment. *See* Dkt. No. 22 at 9-11. Dillard states that he receives regular blood pressure and weight checks, a specialized diet, visitation with a specialist and various medications to combat his condition. Dkt. No. 22 at 9-10. Even accepting Dillard's allegation that Medical Staff allowed the Unit Staff to feed him "slop" as true, Dillard fails to explain what slop is and concedes that he was prescribed a specialized diet to combat his weight fluctuations and high blood pressure. Dkt. No. 22 at 10. Accordingly, Dillard's pleadings do not reflect that the Medical Staff have shown a wanton disregard for his medical needs but rather, illustrate the contrary.

Second, Dillard alleges that the Medical Health Department acted with deliberate indifference when it failed to prevent or address his restricted housing. Dkt. No. 22 at 10. However, there is no indication that Dillard's placement in administrative segregation is interfering with his medical treatment. Therefore, Dillard fails to plead a deliberate indifference claim as he admits he has received medical treatment and fails to articulate how, if at all, administrative housing interrupts those services.

Third, the Medical Staff did not act with deliberate indifference in failing to prevent administration from limiting Dillard's access to commissary. As discussed above, the Medical Staff have placed him on a specialized diet in which he is fed regularly throughout the day, negating any need for food purchases. *See* Dkt. No. 22 at 10. Dillard alleges that these restrictions leave him unable to purchase lotion to treat his dry skin. *See* Dkt. No. 22 at 11. Though dry skin is a condition that medical staff may be required to treat, Dillard does not plead any facts to establish that any of the medical staff were aware of such condition and failed to treat it. *See also Kelly v. Alford*, 2003 U.S. Dist. LEXIS 19016, *5 (finding that dry skin, unrelated to a medical condition, does not constitute a medical need and medical staff did not act with deliberate indifferent to a medical need when they failed to treat it).

Accordingly, Dillard's deliberate indifference claim is DISMISSED for failure to state a claim.

## J.  Mail Tampering

A jail official's interference with an inmate's legal mail may violate the inmate's constitutional right to access the courts. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir.

1993). To prevail, an inmate must show that "his position as a litigant was prejudiced by the mail tampering." *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993).

Dillard claims that the prison officials intercepted a message he sent his mother on his tablet. Dkt. No. 17 at 6. Within this message, Dillard requested his family help him obtain a lawyer. *Id*. However, Dillard concedes that the interception of this message did not prejudice an on-going legal claim. Dkt. No. 22 at 21. Because Dillard's position as a litigant was not prejudiced by Unit Staff's interference, he fails to state a constitutional claim.

Accordingly, Dillard's mail tampering claim is DISMISSED for failure to state a claim upon which relief can be granted.

## VI.  LEAVE TO AMEND

Still, there is the issue of whether the Court must give Dillard leave to amend his complaint. Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

## VII.  CONCLUSION

For these reasons, the Court DISMISSES Dillard's claims with prejudice.

ORDERED this 3rd day of April 2025.

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE